# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| FUN CHARTERS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0263-WS-M |
| | ) |
| The Vessel SHADY LADY, | ) |
| Official No. 681969, her engines, etc., | ) |
| *in rem*, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on plaintiff's Motion for Order Authorizing Supplemental Process upon Appurtenances Removed from Vessel (doc. 26).

Back on June 12, 2014, the U.S. Marshals Service arrested the Vessel SHADY LADY, U.S. Official No. 681969, in Orange Beach, Alabama, pursuant to plaintiff's claims that the Vessel's owner, Adrenaline Charters, LLC, had defaulted on its indebtedness to plaintiff on a note secured by a First Preferred Ship Mortgage. (*See* doc. 11.) Despite actual notice of these proceedings, Adrenaline Charters has neither appeared nor contested plaintiff's claims at any time, whether before or after the Vessel's arrest. On September 16, 2012, the undersigned entered a Decree Ordering Sale of Vessel (doc. 24), directing the Marshal to conduct a sale of the Vessel via public auction on the courthouse steps on October 22, 2014. Included within the scope of that Decree, and the contemplated sale, were items of tackle and appurtenances that may have been removed from the Vessel antecedent to its arrest, including one Pompanette fighting chair, four Penn International fishing rods and reels, and spare gaskets, filters and other parts for the Vessel's engines and generator.

Now, two weeks before the scheduled Marshal's sale, plaintiff, Fun Charters, Inc., requests that supplemental process be issued pursuant to Supplemental Rule C(3)(d) to arrest any such removed or missing appurtenances. The Motion reflects that Edward Sims, sole member of Adrenaline Charters, has informed Fun Charters that the fighting chair and fishing tackle have

been sold. Nonetheless, plaintiff expresses its belief that certain missing appurtenances may be located in a particular storage unit (# E180) at the U STOR-IT storage facility on Canal Road in Orange Beach. Based on these circumstances, Fun Charter moves for issuance of a supplemental writ of arrest or other process, directing the U.S. Marshal and plaintiff to access the storage unit, with the assistance of a locksmith, "so that Storage Unit may be inspected for the presence of any Missing Appurtenances." (Doc. 26, at 3.) Fun Charters contemplates that the Marshal will immediately take possession of any such missing appurtenances that may be located therein, deliver those items to the substitute custodian, and then lock and re-secure the storage unit.

Plaintiff's proposal is troubling in myriad respects. For starters, Fun Charters' factual basis for believing missing appurtenances are now located in the storage unit is suspect, at best. As to the fighting chair and fishing tackle, plaintiff's only evidence is that Sims informed plaintiff that these items have been sold. If that is true, of course, one would not expect to find them in the storage unit today. Plaintiff has not controverted defendant's representation that these items have been sold,[1] so there is apparently no factual underpinning for any belief that those items remain in the storage unit at this time.

Furthermore, for whatever reason, plaintiff appears not to have made inquiry to Adrenaline Charters as to the present contents of the storage unit. At best, plaintiff's evidence that missing appurtenances might be found at that location consists of an affidavit from Adam Newton, a licensed captain who operated the Vessel on charter fishing trips at unspecified dates and times. (Newton Aff. (doc. 26, Exh. B), ¶ 1.) Newton avers that, on those unspecified occasions, he transported unspecified "tackle, parts and appurtenances of the Vessel to and from the Vessel and storage unit E180." (*Id.*, ¶ 2.) The Newton Affidavit lacks any temporal context; therefore, it is impossible to discern whether he last viewed the interior of the storage unit six months or six years ago. The Vessel has been arrested continuously since June 12, 2014, so Newton's information must be at least four months old (inasmuch as he could not have captained the Vessel during its arrest). Nor does Newton describe what (if any) appurtenances were left inside the storage unit when he last visited it. The staleness and vagueness of Newton's account

---

[1] To the contrary, Fun Charters' understanding is that Sims "is apparently in dire financial condition." (Doc. 26, at 3.) Selling a fighting chair and fishing tackle is precisely the sort of conduct one might expect from one who is in dire financial condition.

provides scant support for the proposition that the storage unit is today holding a treasure trove of appurtenances for the Vessel. Yet that is the sole asserted factual basis for Fun Charters' contention that such items may be found at that location.

Exacerbating the Court's concern is the fact that the subject storage unit is not even rented in the name of the Vessel's owner. Indeed, the operator of the storage facility has purportedly advised plaintiff that the renter of that unit is not Adrenaline Charters, but is Edward Sims and Sims' mother. (Fitzsimons Aff. (doc. 26, Exh. A), ¶ 6.) To be sure, Edward Sims is the sole member of Adrenaline Charters, but plaintiff identifies no connection between Sims' mother and the LLC that owns the Vessel. Thus, plaintiff is calling for a U.S. Marshal-led intrusion into a locked storage shed to pick over the personal property of two non-parties, one of whom is not even directly linked to the LLC that is involved in this dispute.[2]

To make matters worse, Fun Charters is not hunting for any discrete, specifically identifiable piece of equipment or accessories to the Vessel. Again, all evidence before the Court is that the fighting chair and rods and reels have been sold, such that there is no reason to believe those items are presently stored in the storage unit. So what is plaintiff looking for? It is hard to tell. Plaintiff generally references "spare gaskets, filters and other parts of the vessel's Cummins model QSM main engines and Cummins model 4B generator and other equipment." (Doc. 26, at 1.) Apparently, plaintiff's proposal is that this Court allow a Fun Charters representative to rummage through the contents of the storage unit under the watchful eye of a Deputy Marshal, with Fun Charters left to make the sole determination in its discretion of what items within the storage unit might fall within the scope of the term "missing appurtenances" subject to arrest. The potential for error or abuse looms unacceptably large with such a methodology, through which plaintiff could effectively direct the Marshal to seize willy-nilly the

---

[2] Additionally, the court file reflects that Edward Sims filed for Chapter 13 bankruptcy protection on June 10, 2014. (*See* doc. 9.) Accordingly, if the contemplated raid of Sims' storage unit were to result in seizure of any personal property of Sims (as opposed to property of the LLC), plaintiff's proposed course of action would face obvious difficulties with respect to the automatic stay provisions of 11 U.S.C. § 362. Plaintiff offers no insights as to how it intends to distinguish between items in Sims' storage unit that may be his own personal property (and, hence, likely untouchable under the automatic stay in bankruptcy) and those that belong to Adrenaline Charters (and, hence, subject to the First Preferred Ship Mortgage terms and conditions).

personal property of Sims and his mother within the storage shed as long as plaintiff subjectively believes such property might be connected to the Vessel.

All of the foregoing aspects of Fun Charters' Motion would be highly problematic in the best of circumstances. But the kicker here is that Fun Charters is requesting that the search of the storage unit be conducted stealthily, on an *ex parte* basis, without prior notice to Adrenaline Charters, to Edward Sims, or to Sims' mother (the co-lessee of the storage unit). As justification for this extraordinary request, Fun Charters cites "exigent circumstances," consisting of "animosity which has been exhibited by Sims towards" representatives of Fun Charters. (Doc. 26, at 2.) Of course, such an emotional reaction by Sims would be understandable. Rarely does a debtor react favorably when a creditor moves against its collateral. It is certainly not unexpected that the principal of Adrenaline Charters might show "animosity" towards the entity forcing the auction of Adrenaline Charters' fishing vessel to pay its debts. Yet plaintiff would have this Court extrapolate from such vitriol a likelihood that Sims would remove, sell or dispose of any missing appurtenances located in the storage unit if given an opportunity to be heard before Fun Charters is granted judicial *carte blanche* to raid his storage unit and take anything it deems connected to the Vessel. Such a vast leap is not supported by fact or logic. Plaintiff identifies no facts suggesting that Sims might knowingly violate court orders (risking judicial sanctions or contempt) restricting him from removing the contents of the storage shed pending an inventory search.[3] Nor is there any factual basis to support plaintiff's insinuation that Sims

---

[3] Besides, plaintiff's interest in any missing appurtenances that might be held in the storage unit has been a matter of public record in this case dating back to August 20, 2014. (*See* doc. 17.) In a filing on that date, Fun Charters specifically identified its intent to seize and sell "spare gaskets, filters and other parts for the vessel's … engines … and … generator and other equipment comprising Vessel kept in storage unit E180 at the U STOR-IT" in Orange Beach. (Doc. 17, at 2.) For more than eight weeks, this document has been readily accessible to Sims, Sims' mother, Adrenaline Charters, and any other member of the public who might visit the Clerk's Office or log onto the PACER database. Surely, then, Fun Charters' own conduct has long "tipped off" Sims to plaintiff's desire to seize the contents of storage unit E180, and Sims has been operating under no legal impediment to removing and disposing of such items in the interim. Even if plaintiff's fear of inequitable conduct by Sims were well-founded, plaintiff's plea for secrecy at this time would appear tantamount to closing the barn door long after any horse that may have resided therein has bolted.

would lie under oath or misrepresent the truth in court filings if asked whether any missing appurtenances were in fact being maintained in the storage unit.[4]

The bottom line is this: Fun Charters is requesting an extraordinary form of relief. It asks for court authorization to commandeer a Deputy U.S. Marshal and a locksmith, conduct a judicially sanctioned break-in of a private storage unit rented to two individuals (one of whom has no apparent connection to the Vessel, and the other of whom appears subject to the protections of the Bankruptcy Code), rifle through the contents of that storage unit and make unilateral determinations of what items might constitute "missing appurtenances" to the Vessel, and have the Marshal seize such items and deliver same to the substitute custodian for inclusion in the October 22 ship sale, all without advance notice, opportunity to be heard or due process for the renters of the storage unit. Other than a generic citation to Supplemental Rule C(3)(d), Fun Charters identifies no authority that might support such a drastic remedy. Although plaintiff mouths the phrase "exigent circumstances," it cites nothing other than innuendo to support such a determination. And plaintiff does not even offer evidence showing a reasonable suspicion that this sweeping incursion into the rights of Sims and his mother will yield anything of value within the ambit of its foreclosure rights under the First Preferred Ship Mortgage.

Plaintiff has other remedies. It has not shown that those remedies are not reasonably available to it here. Its request that the Court fast-forward to the most extreme and invasive remedy on the spectrum is not properly supported in fact or law. For all of these reasons, plaintiff's Motion for Order Authorizing Supplemental Process Upon Appurtenances Removed from Vessel (doc. 26) is **denied**.[5]

---

[4] On this point, plaintiff asserts as follows: "In light of Sims' apparent removal and sale of the fighting chair and billfish rods and reels from the Vessel, Plaintiff is doubtful that an order to show cause directed to Sims and his mother under Rule C(5) would be an effective means of recovering any Missing Appurtenances due to the likelihood that Sims, who is apparently in dire financial condition, will deny knowledge or possession of any Missing Appurtenances." (Doc. 26, at 3.) Plaintiff does not explain why it apparently believes Sims' sale of the chair and fishing tackle amounts to dishonest conduct, or how his personal financial difficulties would translate into a propensity to deceive this tribunal about any "spare gaskets, filters, and other parts" that might be lying around in a storage unit.

[5] As noted *supra*, plaintiff's Motion clearly reflects that plaintiff is not requesting issuance of a show cause order under Supplemental Rule C(5) because "Plaintiff is doubtful that an order to show cause directed to Sims and his mother under Rule C(5) would be an effective (Continued)

DONE and ORDERED this 10th day of October, 2014.

                                                  s/ WILLIAM H. STEELE
                                                  CHIEF UNITED STATES DISTRICT JUDGE

---

means of recovering any Missing Appurtenances." (Doc. 26, ¶ 8.) Nowhere in the relief requested in the Motion does plaintiff identify a Rule C(5) show cause order as an objective of its Motion. Yet in the accompanying brief, plaintiff states that it is asking the Court "to enter an order directing Adrenaline Charters, LLC, Eddie Sims and Joni O'Shields Sims to show cause why they should not deliver the Missing Appurtenances to the U. S. Marshall [*sic*]." (Doc. 26-3, at 4.) Plaintiff does not explain the stark inconsistency between its Motion and its Brief. Under the circumstances, the Court construes the emphatic language of the Motion as the clearest expression of plaintiff's intent; therefore, it will not consider whether a Rule C(5) order might be appropriate at this time, given plaintiff's unequivocal statements in the Motion and the Fitzsimons Affidavit that such a course of action would be undesirable and/or ineffectual.